UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF MINNESOTA BY ITS MINNESOTA POLLUTION CONTROL AGENCY, <br><br> Plaintiffs, <br><br> v. <br><br> ALLETE, INC., D/B/A MINNESOTA POWER <br><br> Defendant. | Case No.: 0:14-cv-2911 |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and the State of Minnesota by its Minnesota Pollution Control Agency ("MPCA"), file this Complaint and allege as follows:

## NATURE OF THE ACTION

1. This is a civil action brought against Allete, Inc., d/b/a/ Minnesota Power ("Minnesota Power" or "Defendant") pursuant to Sections 113(b) and 167 of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. §§ 7413(b) and 7477, Minnesota Stat. § 115.071, Subd. 3 and Title V air permit conditions, for injunctive relief and assessment of civil penalties for violations

of the Prevention of Significant Deterioration ("PSD") provisions of the Act, 42 U.S.C. §§ 7470-92, and requirements of Title V of the Act, 42 U.S.C. § 7661-7661(f).

2.  Defendant modified, and thereafter operated, certain coal-fired electricity generating units without first obtaining appropriate permits authorizing the modification and subsequent operation of these units, and without installing and employing the best available control technology ("BACT") to control emissions of sulfur dioxide ("$SO_2$"), nitrogen oxides ("$NO_x$"), and/or particulate matter ("PM"), as required by the Act and applicable regulations.

3.  Defendant's operation of these units following their unlawful modification has resulted in large amounts of $SO_2$, $NO_x$, and PM pollution each year that have been, and still are being, released into the atmosphere.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this action pursuant to CAA Sections 113(b) and 167, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, and 1355.

5.  Venue is proper in this District pursuant to CAA Sections 113(b), 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b), (c), and 1395(a), because violations occurred and are occurring in this District, and Defendant resides in this District.

## NOTICES

6.  U.S. EPA issued a Notice and Finding of Violation on August 5, 2008 concerning certain units at the Boswell and Laskin Energy Centers located, respectively, in Cohasset and Hoyt Lakes, Minnesota, and a Notice and Finding of Violation on March 31, 2011 concerning the Rapids Energy Center located in Grand Rapids, Minnesota. U.S. EPA provided a copy of

these Notices to the State of Minnesota, as required by Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

7. The 30-day period between issuance of the Notices of Violation and commencement of a civil action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

8. The United States has provided notice of the commencement of this action to the MPCA as required by CAA Section 113(b), 42 U.S.C. § 7413(b).

## THE DEFENDANT

9. Defendant is a Minnesota corporation with headquarters in Duluth, Minnesota. Defendant owns and operates a number of coal-fired electric generating units, including four at the Boswell Energy Center, three at the Taconite Harbor Energy Center (in Schroeder, MN), and two at the Laskin Energy Center. Minnesota Power sells electricity generated from these generating units to customers through a transmission network called the Midwest Independent System Operator (MISO). Minnesota Power also owns and operates a coal-fired and biomass-fired electric generating facility at the Rapids Energy Center, which provides steam, compressed air, and electricity exclusively to a pulp and paper mill owned by the Blandin Paper Company, which is proximately located to the Rapids Energy Center.

10. Defendant is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e).

## **STATUTORY BACKGROUND**

11. The CAA is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population. CAA Section 101(b)(1), 42 U.S.C. § 7401(b)(1).

The National Ambient Air Quality Standards

12. Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to CAA Section 108, 42 U.S.C. § 7408. The primary NAAQS are intended to be adequate to protect public health with an adequate margin of safety, and the secondary NAAQS are intended to be adequate to protect public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

13. Under CAA Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the NAAQS for each criteria pollutant or where the air quality cannot be classified due to insufficient data. An area that meets the NAAQS for a particular pollutant is an "attainment" area. An area that does not meet the NAAQS is a "nonattainment" area. An area that cannot be classified due to insufficient data is "unclassifiable".

14. At all times relevant to the violations alleged in this action, the Boswell, Laskin, and Rapids Energy Centers were located in an area that had been designated as being in attainment with the NAAQS for $SO_2$, $NO_x$, and PM.

15. Pursuant to 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a SIP that provides for the attainment and maintenance of the NAAQS.

The Prevention of Significant Deterioration Requirements

16. Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS. These requirements are designed to protect public health and welfare, to insure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process. These provisions are referred to collectively as the "PSD program."

17. Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

18. A state may comply with CAA Section 161 by having its own PSD regulations approved as part of its SIP by U.S. EPA, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.

19. If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, the federal PSD regulations set forth at 40 C.F.R. § 52.21 shall be incorporated by reference into the SIP. 40 C.F.R. § 52.21(a).

20. U.S. EPA has not approved a State of Minnesota SIP for purposes of the PSD program, but has delegated to MPCA authority to implement the federal PSD program, and the

federal PSD regulations set forth at 40 C.F.R. § 52.21 are incorporated into and are a part of the Minnesota SIP.

21. Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the construction and operation of a "major emitting facility" in an area designated as in "attainment," unless a permit has been issued that comports with the requirements of CAA Section 165 and the facility employs BACT for each pollutant subject to regulation under the Act that is emitted from the facility. Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than two hundred and fifty million British thermal units ("Btus") per hour heat input and that emit, or have the potential to emit, one hundred tons per year or more of any pollutant, to be "major emitting facilities."

22. Section 169(2)(C) of the Act, 42 U.S.C. § 7479(2)(C), defines "construction" as including "modification" (as defined in CAA Section 111(a), 42 U.S.C. § 7411(a)). Modification" is defined in CAA Section 111(a)(4), 42 U.S.C. § 7411(a)(4), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

Title V

23. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources." The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

24. A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any "air pollutant," which includes criteria pollutants. 42 U.S.C. § 7661(2).

25. U.S. EPA fully approved Minnesota's Title V program on December 4, 2001, 66 Fed. Reg. 62967, and the Minnesota regulations governing the Title V program are codified at Minnesota Rules ch. 7007.

26. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), and the Minnesota Title V operating permit program, have at all relevant times made it unlawful for any person to operate a major source except in compliance with a permit issued under Title V.

27. Section 503(b) – (d) of the Act, 42 U.S.C. § 7661b(b) – (d), the Title V regulations at 40 C.F.R. §§ 70.5(a), (c), and (d), and the Minnesota Title V program, have at all relevant times required the owner or operator of a source to submit an application for a Title V permit that is timely and complete and which, among other things, identifies all applicable requirements (including any requirement to meet BACT pursuant to PSD), certifies compliance with all applicable requirements, and contains a compliance plan for all applicable requirements for which the source is not in compliance.

28. Section 504(a) of the Act, 42 U.S.C. § 7661c(a), implementing regulations of the Act, 40 C.F.R. § 70.2, and the Minnesota Title V operating permit program regulations have at all relevant times required that each Title V permit include, among other things, enforceable emission limitations and such other conditions as are necessary to assure compliance with applicable requirements of the Clean Air Act and the requirements of the applicable SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT.

## ENFORCEMENT PROVISIONS

29. Sections 113(a)(1)(C) and (3)(C) of the Act, 42 U.S.C. §§ 7413(a)(1)(C) and (3)(C), provide that the Administrator may bring a civil action in accordance with CAA Section 113(b) whenever, on the basis of any information available, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of, *inter alia*: (1) the PSD requirements of CAA Section 165(a), 42 U.S.C. § 7475(a); (2) the New Source Performance Standards requirements of CAA Section 111, or (2) Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder.

30. Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes EPA to initiate a civil judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring before January 31, 1997; $27,500 per day for each violation occurring on or after January 31, 1997; $32,500 per day for each violation occurring after March 15, 2004; and $37,500 per day for each such violation occurring after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, against any person whenever such person has violated, or is in violation of, among other things, the requirements or prohibitions described in the preceding paragraph.

31. Section 167 of the Act, 42 U.S.C. § 7477, authorizes EPA to initiate an action for injunctive relief, as necessary, to prevent the construction, modification, or operation of a major emitting facility that does not conform to PSD requirements.

**GENERAL ALLEGATIONS**

32. At all times pertinent to this civil action, Defendant has been the owner and operator of the Boswell, Laskin, and Rapids Energy Centers.

33. At all times pertinent to this civil action, the Boswell, Laskin and Rapids Energy Centers have each been a "major emitting facility" and a "major stationary source," within the meaning of the Act and the Minnesota SIP for $NO_x$, $SO_2$, and PM

34. At all times pertinent to this civil action, the Boswell, Laskin and Rapids Energy Centers have each been a "major source" within the meaning of Title V of the Act and the Minnesota Title V program.

**FIRST CLAIM FOR RELIEF**

(PSD Violations)

35. Paragraphs 1 – 34 are realleged and incorporated herein by reference.

36. Defendant commenced construction of one or more major modifications, as defined in the Act, at a minimum at its Boswell and Laskin Energy Centers. Such major modifications included one or more physical changes, including, but not necessarily limited to, replacement of the burner corner panel tubes at Boswell Unit 3 in 1994 and replacement of the economizer at Laskin Unit 2 in 1997. Such modifications resulted in significant net emissions increases, as defined by the relevant PSD regulations, of one or more of the following pollutants: $NO_x$, $SO_2$, and PM.

37. Defendant did not comply with the PSD requirements in the Act and Minnesota SIP with respect to the unit(s) it modified. Among other things, Defendant failed to obtain a PSD permit for the construction and operation of the modified facilities. Defendant did not

9

undergo a BACT determination, and failed to install and operate the best available control technology for control of $NO_x$, $SO_2$, and PM, pursuant to such determination, as required by the Act and the Minnesota SIP.

38. Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD provisions of the Minnesota SIP, at a minimum at the Boswell and Laskin Energy Centers. Unless restrained by an order of this Court, these and similar violations of the Act will continue.

39. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## SECOND CLAIM FOR RELIEF

(Title V Violations)

40. Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41. As set forth above, Defendant modified, at a minimum, the Boswell and Laskin Energy Centers under the PSD regulations in the Minnesota SIP. As a result, such modification triggered the requirements to, *inter alia,* undergo a BACT determination, to obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and to operate in compliance with such limitations. Defendant failed to satisfy these requirements.

42. Subsequently, Defendant failed to submit a complete application for a Title V operating permit for, at a minimum, the Boswell and Laskin Energy Centers and identify all applicable requirements, accurately certify compliance with such requirements, and contain a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to meet BACT pursuant to a determination under PSD).  Defendant failed to obtain a proper or adequate Title V operating permit, at a minimum for the Boswell and Laskin Energy Centers, that contained emission limitations for $NO_x$, $SO_2$, and/or PM that met BACT.  Defendant thereafter operated the Boswell and Laskin Energy Centers without meeting such limitations and without having a valid operating permit that required compliance with such limitations or that contained a compliance plan for all applicable requirements for which the source was not in compliance.  Defendant's conduct violated Sections 502(a), 503(c), and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V operating permit program regulations.  Unless restrained by an order of this Court, these and similar violations will continue.

43. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), the violations set forth above subject Defendant to injunctive relief and civil penalties of up to $32,500 for each day of violation occurring on or after March 15, 2004; and $37,500 for each day of violation occurring on or after January 12, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations set forth above, the United States requests that this Court:

1. Permanently enjoin Defendant from operating the Boswell and Laskin Energy Centers, and any other of its facilities that have been unlawfully modified, including the construction of future modifications, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendant to apply for a PSD permit under Part C of Title I of the Clean Air Act, that conforms with the permitting requirements in effect at the time of the permitting action, for each pollutant in violation of the PSD requirements of the Clean Air Act.

3. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install and operate the best available control technology at the units subject to this action, for each pollutant in violation of the PSD requirements of the Clean Air Act;

4. Order Defendant to apply and/or amend applications for a permit that is in conformity with the requirements of the Title V program;

5. Order Defendant to achieve, maintain, and demonstrate compliance with the CAA and applicable requirements established thereunder, including provisions of the Title V permit requirements described above;

6. Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred that would require it to meet PSD requirements, and report the results of these audits to the United States;

7. Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above;

8. Assess a civil penalty against Defendant of up to $32,500 per day for each violation of the Clean Air Act and applicable regulations occurring after March 15, 2004; and $37,500 per day for each such violation occurring on or after January 12, 2009;

9. Award Plaintiff its costs of this action; and,

10. Grant such other relief as the Court deems just and proper.

Dated: July 16, 2014

Respectfully submitted,

FOR PLAINTIFF UNITED STATES OF AMERICA:

SAM HIRSCH
Acting Assistant Attorney General
Environment & Natural Resources Division

ANDREW M. LUGER
United States Attorney
District of Minnesota

s/ David Rosskam
DAVID ROSSKAM
Senior Counsel
Environmental Enforcement Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-3974
Facsimile: (202) 514-0097
David.Rosskam@usdoj.gov

FRIEDRICH A. P. SIEKERT
Assistant United States Attorney
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5697

OF COUNSEL:

CYNTHIA KAWAKAMI
Associate Regional Counsel
United States Environmental
  Protection Agency, Region 5
77 W. Jackson Boulevard
Chicago, IL 60604-3590

                FOR PLAINTIFF THE STATE OF MINNESOTA BY ITS
                MINNESOTA POLLUTION CONTROL AGENCY:

By:    s/ Leah M.P. Hedman_____
        LEAH M. P. HEDMAN
        Assistant Attorney General
        Atty. Reg. No. 0280501

        445 Minnesota Street, Suite 900
        St. Paul, Minnesota 55101-2127
        (651) 757-1253  (Voice)
        (651) 296-1410  (TTY)